# CIRCUIT COURT OF THE CITY OF NORFOLK

David L. Stearns

v.

Virginia Marine
Resources Commission

December 17, 2001

Case No. (Chancery) CH99-2018

BY JUDGE MARC JACOBSON

On February 16, 1999, David L. Stearns, who resided at 107 West Severn Road, Norfolk, Virginia, applied to the Norfolk Wetlands Board (NWB) for a permit to install 82 linear feet of replacement bulkhead and backfill to prevent continuing erosion of his property. The proposed replacement bulkhead would impact upon 300 square feet of vegetated wetlands. (Shoreline Permit App. Report, Exhibit F, Mem. of Law in Support of Pet. for Appeal.)

At a public hearing of the NWB on April 14, 1999, Appellant's neighbor, J. Castle Craddock, objected to the permit application, disputed Appellant's ownership of the property, and raised concerns regarding the environmental impact of the proposed bulkhead. During this hearing, the NWB heard three separate proposals for solving Appellant's erosion problem: (1) Appellant's proposed bulkhead; (2) Virginia Institute of Marine Sciences' (VIMS) recommendation to place the proposed bulkhead landward of the wetlands; and (3) Craddock's proposal of installing riprap or marshgrass versus a bulkhead.

At the hearing NWB unanimously approved the permit application after making modifications to the original application pertaining to grading and the planting of saltmarsh cordgrass in the effected area.

Craddock appealed the NWB decision to the Virginia Marine Resources Commission (VMRC). On June 22, 1999, the VMRC heard Craddock's objections to the proposed bulkhead. VMRC first entertained a vote to affirm the decision of the NWB, but the vote did not carry. (Tr. of Appeal of David Stearns, No. 99-0234, June 22, 1999, pp. 4-36 through 4-39.) The VMRC then voted six to one in favor of remanding the motion back to the NWB for "further consideration of alternatives" that would minimize the impact of the replacement bulkhead; i.e., further consideration of the VIMS proposal. *Id.*

On August 11, 1999, the NWB conducted the remand hearing and gave further consideration to Appellant's, the VIMS', and Craddock's proposals. At this hearing, Craddock argued that the VRMC remand required Appellant to submit a revised application proposing to move the bulkhead landward, in accordance with the VIMS recommendation. Craddock also argued that there was no erosion present on Appellant's land and, even if there was, "less destructive means" were available to control it.

After discussion of all the alternatives, the NWB unanimously approved Appellant's application. Craddock again appealed the NWB decision to the VMRC.

On September 28, 1999, the VMRC held the second appeal hearing. An environmental engineer for the VMRC reviewed the records, evidence, and decision of the NWB and testified that the:

> [st]aff does not believe that the Board [NWB] erred procedurally in their review or approval of the Stearns application. The record, in this case, shows that the City staff and the Board evaluated the project and the additional information was reviewed subject to the standards for use and development of wetlands as referenced in the Code of Virginia. The Board considered the testimony of staff, the application, all of the attorneys involved, and the consultant, as well as comments from VIMS. Accordingly, staff recommends the Commission uphold the Norfolk Wetlands Board's decision to approve the proposal.

(Tr. of Appeal of David Stearns, September 28, 1999, pp. 1-2, Exhibit E to Mem. of Law in Supp. of Pet. for Appeal (hereinafter "Tr. of Appeal").)

At this hearing, Craddock argued that the NWB erred procedurally in approving the permit because the remand was done "to give the applicants the

opportunity to submit a revised application ..." and that by not revising, Appellant effectively "appealed" the VMRC decision to the NWB.

In response to Craddock's argument, a member of the VMRC noted that they had not directed Appellant to change his application. (Tr. of Appeal, p. 5-10.) VMRC's Chief Habitat Manager, Robert Grabb, also informed the VMRC that while the NWB could have reviewed a revised application, the remand to the NWB did not require one. *Id.* at p. 5-11.

The VMRC then voted, against the advice of staff, as well as its counsel, to reverse the NWB decision "citing procedural error" as the basis for the decision. On October 27, 1999, and November 29, 1999, respectively, the NWB and Appellant filed the instant appeals of the September 28, 1999, VMRC decision, to which filings the VMRC demurred.

On September 21, 2001, Appellant filed a Memorandum of Law in Support of Petition for Appeal. In the time lapsing between this filing and the decision of the VMRC, a Motion to Intervene filed by Craddock was denied, VMRC's Demurrer to NWB's appeal was sustained, and VMRC's Demurrer as to Appellant was overruled.

Appellant's Memorandum argues that the VMRC abused its discretion in reversing the NWB because it substituted its judgment for that of the NWB and that the VMRC violated the statutory standards of review. Appellant requests that this Court: (1) declare that the VMRC's decision reversing the NWB was made "contrary to state law, not supported by the facts in the case, arbitrary and capricious, and an abuse of discretion," and (2) remand the case to the VMRC with instructions that the VMRC determine if the NWB "upheld its responsibilities" in granting Appellant's application.

In its response brief, the VMRC argues that the VMRC's "appellate reversal" of the NWB's decision approving Appellant's application should be upheld because the NWB's action in granting the "same exact application" constituted "unlawful procedure" and "error of law" under Virginia Code § 28.2-1313.

For the first time, the VMRC also argues that the "appellate reversal" of the NWB decision should be upheld because the NWB failed in its responsibilities as enumerated by the Wetlands Zoning Ordinance, Virginia Code § 28.2-1302. VMRC maintains that the NWB was only authorized to grant Appellant's application if (1) the anticipated public and private benefit of Appellant's proposed activity exceeded its anticipated public and private detriment; (2) Appellant's proposed action conformed to the statutory standards of § 28.2-1308 *and* VMRC's Wetlands Guidelines; and (3) Appellant's proposal did not violate the purposes and intent of the Wetlands Zoning Ordinance and Chapter 13 of Title 28.2 of the Code.

The instant case is now before this Court on Appellant's appeal of the decision of VMRC reversing the decision of the NWB arising out of NWB's decision after remand as aforesaid by the VMRC to NWB.

Judicial review of a VMRC decision is authorized by Virginia Code § 28.2-1315. Such review must be undertaken in accordance with the provisions of the Administrative Process Act (§ 2.2-4000 *et seq.*) (formerly § 9.6-14, repealed October 1, 2001). The Administrative Process Act § 2.2-4027, "Issues on Review," states that:

> [t]he burden shall be upon the party complaining of agency action to designate and demonstrate an error of law subject to review by the court. Such issues of law include: (i) accordance with constitutional right, power, privilege, or immunity, (ii) compliance with statutory authority, jurisdiction limitations, or rights as provided in the basic laws as to subject matter, the stated objectives for which regulations may be made, and the factual showing respecting violations or entitlement in connection with case decisions, (iii) observance of required procedure where any failure therein is not mere harmless error, and (iv) the substantiality of the evidentiary support for findings of fact. The determination of such fact issues shall be made upon the whole evidentiary record provided by the agency. ...
>
> *When the decision on review is to be on the agency record, the duty of the court with respect to issues of fact shall be limited to ascertaining whether there was substantial evidence in the agency record upon which the agency as the trier of the facts could reasonably find them to be as it did. ...*
>
> Whether the fact issues are reviewed on the agency record or one made in the review action, the court shall take due account of the presumption of official regularity, the experience and specialized competence of the agency, and the purpose of the basic law under which the agency has acted.

Va. Code Ann. (2001) (emphasis added.)

This limited judicial review can be defined by dividing it into three separate categories: (1) whether the agency acted in accordance with the law; (2) whether the agency made a procedural error that was not harmless error; and (3) whether the agency had sufficient evidential support for its findings of fact. *Johnston-Willis Ltd. v. Kenley*, 6 Va. App. 231, 369 S.E.2d 1 (1988).

In the review of the instant case, this Court must consider whether or not an error of law as defined by the above Virginia Code section appears in the record. Va. Code Ann. § 2.2-4029 (2001). Error of law can be divided into

two categories: (1) "whether the agency decision-maker acted within the scope of his authority;" and (2) "whether the decision itself was supported by evidence." *Johnston-Willis*, 6 Va. App. at 242. If an agency had the statutory authority to make the decision and the decision was made with the intent of the statute in mind and within the limits of the agency's discretion, a court cannot find an error of law. Whether the decision was supported by evidence is based upon a review of the agency record. The question that must be asked is "whether substantial evidence exists in the agency record to support the agency's decision." *Id.* In making such a determination, the Court cannot substitute its judgment for that of VMRC's in regard to factual issues. *State Bd. of Health v. Godfrey*, 223 Va. 423, 290 S.E.2d 875 (1982). Upon review, if the Court determines that no error exists, the review must be dismissed or this Court must affirm the agency's decision. *Johnston-Willis*, 6 Va. App. at 242.

If there is error found in the agency decision, the Court can "compel agency action unlawfully and arbitrarily withheld ... except that the court shall not itself undertake to supply agency action committed by the basic law to the agency." *Id.* To compel withheld action, the Court "shall suspend or set it aside and remand the matter to the agency for further proceedings, if any, as the court may permit or direct in accordance with law." *Id.* However, this may only be done if, after "considering the record as a whole, a reasonable mind would necessarily come to a different conclusion." *Id.* (citing *Virginia Real Estate Comm'n v. Bias*, 226 Va. 264, 269, 308 S.E.2d 123, 125 (1983); *Roanoke Memorial Hosp. v. Kenley*, 3 Va. App. 599, 610, 3512 S.E.2d 525, 531 (1987); *Kenley v. Waterway Estates, Ltd.*, 3 Va. App. 50, 56, 348 S.E.2d 31, 34 (1986).

VMRC's duty when reviewing Wetland Board decisions is to determine whether or not the local Wetlands Board fulfilled its responsibilities when it granted a permit. The VMRC can modify, remand, or reverse the decision of a wetlands board if:

1. [t]he wetlands board, in reaching its decision, failed to fulfill its responsibilities under the wetlands zoning ordinance; or
2. [t]he substantial rights of the appellant or the applicant have been prejudiced because the findings, conclusions, or decisions of the board are:
(a) [i]n violation of constitutional provisions; (b) [i]n excess of statutory authority or jurisdiction of the wetlands board; (c) [m]ade upon unlawful procedure; (d) [a]ffected by other error of law; (e) [u]nsupported by the evidence on the record considered as a whole; or (f) [a]rbitrary, capricious, or an abuse of discretion.

Va. Code Ann. § 28.2-1313 (2001).

In order to prevail in the instant case, Appellant must show that VMRC committed an error of law. As the Virginia Court of Appeals in *Johnston-Willis, Ltd. v. Kenley* stated:

> [w]here the issue is whether there is substantial evidence to support findings of fact, great deference is to be accorded the agency decision. *Where the issue falls outside the specialized competence of the agency, such as constitutional and statutory interpretation issues, little deference is required to be accorded the agency decision. Where, however, the issue concerns an agency decision based on the proper application of its expert discretion, the reviewing court will not substitute its own independent judgment for that of the agency but rather will reverse the agency decision only if that decision was arbitrary and capricious.* Finally, in reviewing an agency decision, the courts are required to consider the experience and specialized competence of the agency and the purposes of the basic law under which the agency acted.

6 Va. App. 231, 246, 369 S.E.2d 1, 28-29 (1988) (emphasis added).

On VMRC's first review of the NWB's decision to grant Appellant's application, the VMRC voted to remand the matter back to the NWB after being informed by VMRC counsel that they had two possible grounds under § 28.2-1313 upon which to make the determination. Counsel for the VMRC also informed the members that "[t]hey've got nothing there ... in excess of the statutory authority or jurisdiction of the Wetlands Board, we haven't heard anything about that, made upon a unlawful procedure, we haven't heard anything about that." (Tr. of Appeal of David Stearns, No. 99-0234, June 22, 1999, p. 4-34.)

VMRC entertained three motions at the June 22, 1999, hearing, one relating to approval of Appellant's application and two relating to remanding the matter back to the NWB. *Id.* Contrary to the assertions of the VMRC in their Response Brief and of Craddock's counsel, Mr. Eric Schwartz, at the June 22, 1999, hearing before the VMRC, at the previous hearing the VMRC did not vote to "not uphold the decision of the Norfolk Wetlands Board" nor did the VMRC vote "to remand the case *to give the applicants an opportunity to submit a revised application to the Norfolk Wetlands Board.*" (Tr. of Appeal, No. 99-0234, September 28, 1999, pp. 5-7 through 5-8) (emphasis added).) These assertions are not supported by the record. As indicated above, only three motions were entertained at the June 22, 1999, hearing and

none could justifiably, nor reasonably, be said to express what the quoted portions of this paragraph suggest.

A review of the record indicates that at the July 22, 1999, hearing, the VMRC voted to remand the application for additional consideration of the alternatives because it felt that the VIMS proposal warranted further consideration by the NWB. It is interesting to note that before the vote to remand the decision to the NWB for further consideration of the VIMS proposal took place, Associate Member Goodell of the VMRC noted that "that's a suggestion we can't hold the Norfolk Wetlands Board to. ..." (Tr., June 22, 1999, p. 4-36.)

On remand, the summarized record states and indicates that the NWB discussed and considered the various alternative proposals. Again, the staff of the NWB recommended to the NWB that they approve Appellant's application with the previously made modifications. The NWB discussed the options, heard testimony from Deborah Stearns and neighboring property owner Ed Lott, who testified in support of the application and attested to the steady erosion over the past 23 years of the existing bulkhead, and noted a petition from an earlier hearing with signatures of adjacent property owners of Appellant in support of the application. (Summ. of June 19, 1999, NWB hearing, Appellant's Mem. of Law, Exhibit D.)

At the appeal hearing held by the VMRC, Heather Wood, Environmental Engineer, indicated to the VMRC that the NWB "considered the VIMS report," however, "[c]ity staff ... indicated that doing so would result in slumping of the wetlands area into the basin and contributing to siltation in the basin." (Tr. of Appeal of David Stearns, No. 99-0234, September 28, 1999, p. 5-5.) Ms. Wood reiterated to the VMRC that the:

staff does not believe that the Board erred procedurally in their review or approval of the Stearns' application. ... The record, in this case, shows that the City staff and Board evaluated the project and the additional information was reviewed subject to the standards for use and development of wetlands as referenced in the Code of Virginia. The Board considered the testimony of staff, the application, all of the attorneys involved, and the consultant, as well as comments from VIMS.

*Id.* at 5-6.

At this hearing, Mr. Schwartz, counsel for Craddock, suggested that, at the first VMRC appeal hearing, the VMRC denied Appellant's application and remanded it to the NWB with the "order" that it be revised. *Id.* at 5-7

220

through 5-10. It is important to note, however, that Associate Member Cowart commented that:

> [m]y recollection was that we directed ... we actually remanded the case back to the Norfolk Wetlands Board to consider all the environmental factors that were involved in the case. And I wasn't aware that we had actually directed them to change the application to read differently and to actually move the bulkhead landward of the one that is there now as the VIMS recommendation.

*Id.* 5-10 through 5-11.

Additionally, Robert Grabb, Chief of Habitat Management, explained to the VMRC that the NWB did exactly as the VMRC requested they do, i.e., entertain additional information regarding the environmental impacts of the proposals and thus reconsider the various proposals. The Chairman of the NWB also testified at the hearing. He explained that when the NWB received the letter directing them to reconsider their decision they "looked at all the alternatives" and decided that because each of the proposals would have similar negative impacts upon the disputed wetlands, it was appropriate to keep the proposed bulkhead on the same line as the current deteriorating bulkhead. *Id.* at 5-16. The Chairman stated that the NWB determined it was "the best solution for the problems we were faced with at that time. ..." *Id.*

Cynthia Hall, Deputy City Attorney for the City of Norfolk, explained to the VMRC that the:

> understanding of this [remand] letter was that you wanted us to consider alternatives, not that we should ... not that there was a directive from this Commission to actually find another alternative. I can assure you that the Board carefully considered all the alternatives. They went back and they looked at the alternative for keeping it where it was, for moving it landward as was recommended in the VIMS. They looked at putting a rip rap structure and they actually went back and the staff actually brought before the Board each of those items again. And looking at all those alternatives again in detail and looking at the erosion issue, the best decision or the most appropriate decision in this case was to keep the proposed alignment exactly in the same alignment. ...

*Id.* at 5-17.

At the conclusion of the second hearing, the VMRC voted to reverse the decision of the NWB on the apparent single ground that the VMRC believed

that the NWB erred procedurally in approving the same application on remand. *Id.*

In *The Coves at Wilton Creek, L.P. v. Marine Res. Comm'n*, 20 Va. Cir. 527 (Fairfax 1988), The Coves challenged a VMRC decision that denied the issuance of a permit requesting the authority to build "forty-nine open pile wet boat slips, a community boat ramp, and related mooring facilities." The court stated that the VMRC must consider a number of competing factors in making the determination to grant or deny a permit, including the effect of the proposed project upon other uses of waters, the effect upon marine and fisheries resources, the effect on the wetlands and adjacent or nearby properties, anticipated public and private benefit, and standards of water quality. *Id.*

The court held that where the VMRC based its denial in *The Coves* solely upon "shellfish condemnation," the VMRC abused its discretion because the condemnation was but only one of many competing factors the VMRC was required to consider. Additionally, the court noted that even if the record showed the VMRC considered other factors, the court still would not be able to find that the VMRC possessed substantial evidence[1] to support their decision. *Id.*

In the instant case, it appears that VMRC focused singly upon the fact that the NWB granted the same application that was remanded to it. Nothing in the record of the second appeal hearing addresses any other reason for the reversal of the NWB decision, other than the "procedural error" of the NWB.

As in *The Coves* case, the VMRC's failure to consider all the factors nullifies their decision because they failed to comply with their statutory mandate, consideration of all of the factors enumerated within § 28.2-1313.

The Virginia Supreme Court in *Nassif v. Board of Supervisors of Fairfax County*, 231 Va. 472, 345 S.E.2d 520 (1986), stated that a court can limit issues on remand with "words of limitation or restriction." The Court held that remand orders are not violated when the lower court follows the letter of the order. *Virginia Power Co. v. Westmoreland-L. G. & E. Partners*, 259 Va. 319, 526 S.E.2d 750 (2000).

In the instant case, VMRC alleges that the NWB procedurally erred because they approved the same application which was remanded to them for "further consideration of alternatives." This issue falls outside of the specialized competence of the agency because it deals with procedural

---

[1] Evidence is substantial if a reasonable mind might accept the relevant evidence as adequate to support the conclusion. *The Coves*, 20 Va. Cir. 527 (citing *Atkinson v. ABC Commission*, 1 Va. App. 172, 176 (1985)).

matters, an area in which courts have special competence. Thus, this Court need not grant "great deference" to the VMRC's decision as "there is little reason for the judiciary to defer to an administrative interpretation." *Id.* at 243.

Based upon a reading of the record, considering the record as a whole, and granting the VMRC decision the deference entitled under *Johnston-Willis*, this Court rejects the VMRC's argument because upon a review of the record, and without the Court substituting its own independent judgment for that of the VMRC, a reasonable mind reasonably reaches a different conclusion than was reached by the VMRC. The transcripts and summaries support the NWB's position that they conscientiously adhered to VMRC's limited remand order requiring them to reconsider the alternative proposals and recommendations that individual VMRC board members recognized was not binding upon the NWB.

Based upon *Johnston-Willis* and *The Coves*, this Court holds that under the plain meaning of the VMRC's statement in remanding the matter to the NWB and where the VMRC focused narrowly upon one factor not relevant to the intent of the statute, there was no procedural error made by NWB in approving Appellant's application. Thus, reversal of the NWB decision by the VMRC was arbitrary, capricious, and constituted an abuse of discretion.

Due to this Court's finding that the NWB's procedural actions did not constitute unlawful procedure or an error of law, this Court must then determine if the NWB complied with the mandate of the Wetlands Zoning Ordinance.

The Wetlands Zoning Ordinance (hereinafter the "Wetlands Guidelines") preface states under the heading "Criteria for Evaluating Alterations to Wetlands" that:

> [t]he legislature established a policy "to preserve the wetlands and to prevent their despoliation and destructions and to accommodate necessary economic development in a manner consistent with wetlands preservation." This section addresses the foregoing policy. Many proposed uses of the shoreline can be accommodated with little or no loss of wetlands if the following criteria are applied. *There are times, of course, when these criteria may not apply in specific cases.*

Wetlands Guidelines, Exh. B, VMRC Record of David Stearns) (emphasis added).

In regard to "Shoreline Protection Strategies," the guidelines state:

1. Shoreline protection structures are justified only if there is active, detrimental shoreline erosion which cannot be otherwise controlled; if there is rapid sedimentation adversely affecting marine life or impairing navigation which cannot be corrected by upland modifications. ... 2. For shorelines experiencing mild to moderate erosion, the planting of marsh grasses is a preferred means of stabilization. *Note*: The planting of marsh grasses is not appropriate on all shorelines. ...

Id.

In order for the VMRC to find that the NWB failed to fulfill its responsibilities under the Wetlands Guidelines, it would be incumbent that the VMRC found that the NWB failed to "preserve and prevent the despoliation and destruction of wetlands within its jurisdiction. ..." Va. Code Ann. § 28.2-1302 (2001). In making such a decision, the VRMC is required to consider:

(1) [t]he testimony of any person in support of or in opposition to the permit application; (2) [t]he impact of the proposed development on the public health, safety, and welfare; and (3) [t]he proposed development's conformance with the standards prescribed in § 28.2-1308 of the Virginia Code and guidelines promulgated pursuant to § 28.2-1301 of the Code of Virginia.

Va. Code Ann. § 28.2-1302, § 10(A) (2001).

However, the statutes states that the VMRC shall grant a permit if:

(1) [t]he anticipated public and private benefit of the proposed activity exceeds its anticipated public and private detriment. (2) [t]he proposed development conforms with the standards prescribed in § 28.2-1308 of the Code of Virginia and guidelines promulgated pursuant to § 28.2-1301 of the Code of Virginia. (3) [t]he proposed activity does not violate the purposes and intent of this ordinance or Chapter 13 (§ 28.2-1300 et seq.) of Title 28.2 of the Code of Virginia.

Va. Code Ann. § 28.2-1302, § 10(B) (2001).

Thus, this Court must make the determination of whether there is substantial evidence contained within the records and proceeding in the instant case to support the NWB decision or whether the records and proceedings support the decision made by the VMRC.

For the VMRC to reverse the NWB decision granting Appellant's application, the VRMC would have to find that the NWB failed to consider the factors stated above. However, independent review of the record reveals the exact opposite. The record in the instant case reveals that the NWB did, in fact, take into consideration each of the factors set forth and above-enumerated. On its face, the record is replete with undeniable evidence that each of the proposed alternatives would have a negative impact upon the existing wetlands. The record reflects that the NWB did take into account the above required factors and, in the end, the NWB chose, after considering all of the evidence presented, what they believed to be the least detrimental alternative.

The record does not support the VMRC's newly adopted argument that the public and private detriment far surpasses any public or private benefit. A reading of the record reveals that the NWB received ample evidence upon which to make a determination that the "anticipated public and private benefit of the proposed activity exceeds its anticipated public and private detriment." Va. Code Ann. § 28.2-1301, § 10(B) (2001).

In respect to whether or not the decision to approve Appellant's application conforms to the stated goals of the Wetlands Guidelines, it is important to note that the Wetlands Guidelines are just that, guidelines. The preface to the Wetlands Guidelines itself states that the recommendations are not applicable to every situation that may be encountered. In the instant case, all of the alternatives were shown to present unique problems and all could be detrimental to the existing wetlands, due to the activities and events that occurred in the area prior to Appellant's ownership of the property. None of the alternatives could be executed without some destruction of wetlands, and in the case of the riprap or VIMS proposal, without erosion continuing on the property.

Conformity with the Wetlands Guidelines promulgated by § 28.2-1308 requires that "wetlands … not be unreasonably disturbed." Va. Code Ann. (2001). From the record, it cannot be said that Appellant's alternative, versus the other proposals, "unreasonably" disturbs the subject wetlands. Furthermore, it appears that the intent of the statute is to prevent widespread development resulting in the loss of substantial areas of wetlands within the Commonwealth of Virginia. It is the view of this Court that the statute was intended to thwart large-scale development in wetland areas, not designed to create unnecessary and prolonged litigation over backyard repair and maintenance, and indeed, for a very small area, as in the instant case.

This Court recognizes that substantial evidence existed on the record that supports the NWB decision. However, "when deciding whether an agency has followed proper procedures or complied with statutory authority, an

inquiry into whether there is substantial evidence in the record to support findings of fact of an agency is wholly inappropriate." *Johnston-Willis,* 6 Va. App. at 243. Even though there may be substantial evidence to support such a finding, "it may be subject to reversal because the agency failed to observe required procedures or to comply with statutory authority." *Id.*

Nevertheless, this Court determines and finds that the NWB did not commit procedural error in making the decision to approve Appellant's application. It is clear that the NWB acted strictly within the purview of VMRC's order, which order, as counsel for Craddock would attempt to assert, did not mean that the VMRC required a new application by Stearns. It is also clear that the NWB made their decision within the guidelines of their statutory mandate and fully took into consideration the preservations of wetlands in making their decision. The NWB heard testimony, questioned witnesses, discussed alternatives, and considered each alternatives' negative impacts upon the affected property. The record further indicates that the NWB did in fact consider the public and private benefits of the proposal, the guidelines of § 28.2-1301, and the intent and purpose of Chapter 13 of Title 28.2 before making the decision approving Appellant's application. The VMRC failed to recognize that the NWB, in its discretion, chose the alternative that they decided was the most viable, while adhering to the Wetlands Guidelines.

This Court finds that, in the instant case, the NWB did not fail in its responsibilities under the mandate of the Wetlands Zoning Ordinance and that the VMRC committed an error of law in failing to sustain the NWB's decision to approve Appellant's application. The VMRC decision to reverse the NWB decision was without evidentiary support, was contrary to law, arbitrary, capricious, and an abuse of its delegated discretion, and particularly where its ground for reversal was the improper notion that the NWB committed procedural error, although even the VMRC's staff and counsel did not take that position.

The decision of the VMRC is set aside and the matter is remanded to the VMRC with instructions that the VMRC grant Appellant's application as approved by the NWB.